Filed 11/13/20  In re Jacob E. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re JACOB E., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARGARITA M., <br><br> Defendant and Appellant. | F080739 <br><br> (Super. Ct. No. 18JP00073A) <br><br> **OPINION** |

**THE COURT**[*]

APPEAL from an order of the Superior Court of Merced County.  Donald J. Proietti, Judge.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Jennifer Trimble, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Peña, Acting P.J., Smith, J. and De Santos, J.

Dependency jurisdiction was taken over then-12-year-old Jacob E. due to the inability of his mother, Margarita M. (mother), to care for him for several reasons, including substance abuse. Mother was ordered to be provided with family reunification services and, a few months later, was incarcerated. Mother participated in some services while she was in prison for approximately one year. Her services were continued to 12 months and again to 18 months. At the time of the 18-month status review hearing, mother had been released from prison, had used drugs immediately upon release, entered an inpatient residential treatment facility, and relapsed a second time while in treatment. Mother had been sober for approximately two months at the time of the hearing and requested six more months of reunification services. The court denied her request, finding it was not in Jacob's best interests and there was not a substantial probability he could be returned to mother's care within the next six months. Jacob was found not to be adoptable, a plan of long-term foster care was selected, and a status review hearing was set. Mother appeals the juvenile court's order denying her an additional six months of reunification services.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, mother's friend contacted the Los Banos Police Department stating that mother had left Jacob in her care, and she (the friend) could no longer care for him. Police located mother who was staying with her boyfriend. Mother was arrested for abandonment and child neglect, cited, and released.

A referral of general neglect and caretaker absence was made to the Merced County Human Services Agency (agency). A police sergeant told the investigating social worker mother was a known drug user. Jacob reported to the police sergeant that he had

---

[1]     Jose E., presumed father of Jacob, was incarcerated at the time of Jacob's removal. He was offered reunification services, but his services were terminated at the 12-month status review hearing. He is not a party to this appeal, and we have omitted facts that pertain to him.

been living with his maternal aunt for about a year in Monterey County. About six weeks prior, mother withdrew him from elementary school in Salinas, brought him to Los Banos, and enrolled him in school there. Jacob and mother had been homeless for about three to four weeks and had been staying in different locations with different people. Jacob reported he had suicidal ideations and had thought about harming himself by cutting within the last 12 months. Jacob also reported finding syringes in mother's car approximately four days prior.

Jacob reported to the social worker that mother often left him with strangers or friends or family members. Jacob stated he was afraid of mother because she did not know how to handle her anger and took it out on him. Jacob reported mother had slapped him several times. The social worker learned through a record check that in September 2017, in Monterey County, allegations for physical abuse against mother were substantiated, and it was reported that drug use was an issue. Jacob told the social worker he did not want to go back with mother.

Mother told the social worker she was going through a divorce and was currently on an ankle monitor for a burglary charge. Mother reported suffering from depression and anxiety and that she was on leave from work due to her mental health. Mother stated she took medication for anxiety but that her depression was untreated. Mother reported she last used methamphetamine in January 2018. Mother reported losing custody of her three younger children to their father due to her substance abuse. Mother refused to provide a drug test the day of her interview.

The agency filed a petition on behalf of Jacob alleging he came within the juvenile court's jurisdiction under Welfare and Institutions Code section 300,[2] subdivisions (b)(1) [failure to protect], (c) [serious emotional damage], and (g) [no provision for support].

---

[2] All further undesignated statutory references are to the Welfare and Institutions Code.

3.

Specifically, the agency alleged Jacob was at risk because of mother's substance abuse and untreated mental health issues, failure to provide him with necessities of life, and causing him emotional damage by her ongoing neglect and abuse evidenced by his suicidal ideation. The court ordered Jacob detained, and he was placed with relatives. Following the detention hearing, mother tested positive for amphetamines, benzodiazepines, ecstasy, marijuana, methadone, methamphetamine, and opiates.

In July 2018, Jacob told the social worker he did not want to see mother, had not talked to her, and wanted to stay with his grandmother and aunt with whom he was placed. At Jacob's request, he was not having visitation with mother and had blocked her telephone number. Mother admitted to the social worker she had been using drugs daily but had been trying to "cut down" since the agency had become involved. Mother said she had completed a 10-month treatment program in prison in 2005 and got treated at the residential treatment facility, Tranquility Village, from September 2016 through March 2017. Mother reported relapsing immediately after leaving the program. Mother told the social worker she did not have a good support system and would not sign a release of information form to have a drug and alcohol assessment because she was "not ready to change." Mother reported being in a series of violent relationships. She was currently staying with a "boyfriend/friend" who used illegal substances and had given her bruises on her arms.

At the uncontested combined jurisdictional and dispositional hearing on August 8, 2018, the juvenile court found Jacob was described by section 300, subdivisions (b), (c), and (g) and adjudged him a dependent of the court. The court removed Jacob from mother's physical custody. The court ordered the agency to provide family reunification services to mother, including participating in a mental health assessment, a domestic violence program, parenting education, a drug and alcohol assessment, and random drug testing. The service objectives in mother's case plan were: (1) Obtain resources to meet the needs of your child and to provide a safe home. Obtain suitable housing; (2) Stay free

4.

from illegal drugs and show your ability to live free from drug dependency. Comply with all required drug tests; (3) Comply with medical or psychological treatment; (4) Do not break the law. Avoid arrests and convictions; and (5) Do not behave in a manner that is verbally, emotionally, physically, or sexually abusive or threatening. Do not involve yourself or Jacob in violent relationships or behavior. The court advised mother that substance abuse services were the priority.

Mother was scheduled to complete a substance abuse assessment on September 17, 2018, but did not appear for the appointment. On September 20, 2018, mother was arrested for burglary and other crimes and remained in custody while her criminal case was pending. Mother did not schedule her mental health or domestic violence services before being incarcerated.

In November 2018, Jacob was removed from his relative caretaker and placed in foster care. Jacob initially did not engage with the other youth in his foster home, but over time, he started to like the home and enjoyed participating in activities there.

On January 16, 2019, mother was convicted of burglary and was sentenced to four years in prison. Jacob became open to having video chat visits with mother.

At the uncontested six-month status review hearing, the court continued mother's reunification services.

The agency's 12-month status review report indicated that Jacob became willing to visit with mother. The facility at which mother was incarcerated required Jacob to provide his birth certificate, however, and the social worker reported she would schedule visits once Jacob's birth certificate was obtained. When asked for a statement for the 12-month status review report, Jacob reported to the social worker, "I would like to go back home with my mom, or my tia."

The agency's recommendation in its 12-month status review report was to terminate mother's reunification services because she had not met the objectives of her

case plan and would not be able to reunify with Jacob at the 12-month mark. The agency's recommendation for a permanent plan was accelerated foster care.

At the 12-month status review hearing, on September 17, 2019, mother requested that her services be extended to 18 months. Mother testified she was due to be released from custody on October 5, 2019. Mother testified she had participated in some services in prison, including the completion of a parenting class. Mother said she participated in approximately two months of substance abuse classes in prison but did not complete them because she was transferred, and the facility to which she was transferred had a waitlist for substance abuse.

Mother called Jacob every week and talked to his foster parents about what he was up to. Mother testified her plan upon release was to live in a sober living facility. The last time she used drugs was the day she got arrested.

When mother was asked if she believed she would be able to have Jacob in her care by December 9, she responded, "I'm scared. I'm scared that I won't be able to give him the stability that he has right now, cause he has really good stability. So I'm going to do my best." She testified she wanted to have Jacob with her, but she did not want to "say December because it sounds so soon, but it seems like that's what my intentions are…. I have to just be realistic and just do what I have to do to get him back in my custody as soon as possible."

After mother put on her evidence, the parties agreed mother's services would be extended to the 18-month mark. The court ordered reunification services continued up to the 18-month status review hearing. The court ordered mother to notify the social worker as soon as she was released from custody and advised her that the next court date was "obviously critical."

The agency's 18-month status report indicated that after the 12-month status review hearing, a correctional counselor reported to the social worker that mother only participated in substance abuse classes for 10 days.

6.

Mother was released from custody on October 5, 2019. On October 9, 2019, mother admitted to using methamphetamine upon release from prison. On October 15, 2019, mother entered the Tranquility Village residential drug treatment program. She began participating in services including anger management, living and balance, and women's addiction. The program did not allow children of Jacob's age to reside in their program. On December 4, 2019, mother admitted to using methamphetamine within the last two weeks while she was in treatment.

Mother completed a mental health assessment and it was determined she did not qualify for services.

After mother was released from custody, she and Jacob participated in two supervised visits and talked on the telephone daily. Mother and Jacob both reported the visits were going well and that they would like increased visits. Jacob told the social worker that besides wanting more visits with mother, he was otherwise fine.

The agency recommended termination of mother's reunification services. The agency determined Jacob was not adoptable and that the most appropriate permanent plan was accelerated foster care.

Jacob's Court Appointed Special Advocate (CASA) also prepared an 18-month status review report. In his report, Jacob's CASA reported Jacob was thriving in his placement. Jacob's grades had improved from D's and F's to A's and B's, and he was involved in football. Jacob expressed interest in seeing mother more. The only negative issue raised by Jacob to his CASA was uncertainty about the case. Jacob's CASA noted this caused Jacob "a great amount of stress." Jacob's CASA's recommendation for the 18-month status review hearing was termination of mother's services and Jacob be given a timeline of the case because of his uncertainty.

Mother contested the agency's recommendation and testified at the 18-month status review hearing on January 28, 2020. Mother testified she was using methamphetamine before she was arrested but did not use while incarcerated. When

7.

mother was first released, she stayed at a friend's house. On October 8, 2019, she used methamphetamine because the friend with whom she was staying was using. Mother told her social worker and her parole officer the next day and entered residential treatment at Tranquility Village on October 15, 2019.

At Tranquility Village, mother took process group, anger management, relapse prevention, and parenting classes and found the classes helpful. Mother used methamphetamine again while in treatment on November 25, 2019. Mother attributed it to running into people that were still using and "thinking that I was stronger than the drug and that I could surround myself around people that are using and I wouldn't use, but temptation got the best of me I think." Her parole officer arrested her for violating her parole for using drugs on November 25. Mother was in jail for five days, and she missed a visit with Jacob due to her incarceration. She testified she had not used methamphetamine since November 25. Mother also completed a 14-week domestic violence support group program.

Mother testified her first visits with Jacob after being released were awkward, but at the time of her testimony, she reported he had become very affectionate toward her and wanted to talk with her.

Mother testified she was scheduled to be released from the residential treatment program on March 7, 2020. Upon completion of the program, she planned to live at a licensed sober-living environment. She entered a letter into evidence from the sober living facility, which indicated she could move in with Jacob once she completed her residential program.

Mother was working dispatch for a taxi company part time and planned to work full time once she completed her program.

Mother's counsel asked her how she planned to avoid future relapse, and mother did not respond. Her counsel then asked, "Do you know?" and she responded, "That's a good question. Um, I don't know how to explain it. I just—it's a tough question." She

then stated that one of the most important things she has learned is to stay away from people who use drugs and has plans to do so in the future. She testified she believed the agency and the court can be confident in placing Jacob with her and not worry about his safety by June 2020 because she has learned the dangers of hanging around the wrong people and thinking she could not use drugs.

Mother testified she had not completed any drug programs in the past but had previously been at Tranquility once in 2016. She immediately relapsed when she left the program because she was going through her divorce. Mother began using drugs when she was about 27 years old and was 43 years old at the time of the hearing. When she was using drugs, she was using every day, more than once a day.

Counsel for the agency and Jacob's counsel argued that mother's reunification services should be terminated. The court terminated mother's services and ordered placement with a confidential caretaker with a specific goal of independent living as the permanent plan for Jacob. A status review hearing was set for January 2021.

Mother appealed.

## DISCUSSION

Mother contends the court erred by denying her request to extend her reunification services to 24 months. We disagree.

### I. Relevant Law

At the 18-month status review hearing, or permanency review hearing, the juvenile court must order the return of the child to the physical custody of the parent unless it finds the return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. (§ 366.22, subd. (a)(1).) If the child cannot be returned home, the court must order termination of reunification services to the parent and commence proceedings to implement a permanent plan for the child. (§ 366.22, subd. (a)(3).) The court may continue the case for up to six months if the child is not returned to the parent, provided the hearing occurs within 24 months of

9.

the date the child was originally taken from the physical custody of the parent if specific findings are made by the juvenile court. (§ 366.22, subd. (b).)

In order to continue reunification services past 18 months, the juvenile court must find by clear and convincing evidence that continuance and further reunification services are in the best interests of the child and the parent is, as relevant here, "[(1]) making significant and consistent progress in a court-ordered residential substance abuse treatment program … or … [(2)] recently discharged from incarceration … and making significant and consistent progress in establishing a safe home for the child's return." (§ 366.22, subd. (b).) If the court makes the required findings by clear and convincing evidence, it "may continue the case for up to six months for a subsequent permanency review hearing, provided that the hearing shall occur within 24 months of the date the child was originally taken from the physical custody of his or her parent or guardian." (*Ibid.*)

The court must also find "there is a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time or that reasonable services have not been provided to the parent." (§ 366.22, subd. (b).)

A finding of "a substantial probability that the child will be returned to the physical custody of his or her parent … and safely maintained in the home within the extended period of time," requires the court to find all of the following subfactors:

"(1) That the parent or legal guardian has consistently and regularly contacted and visited with the child[;]

"(2) That the parent or legal guardian has made significant and consistent progress in the prior 18 months in resolving problems that led to the child's removal from the home[; and]

"(3)(A) [As relevant here,] [t]he parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her substance abuse

10.

treatment plan as evidenced by reports from a substance abuse provider as applicable….”
(§ 366.22, subd. (b)(1)-(b)(3)(A).)

## II.    The Court Did Not Err by Denying Mother's Request for Extended Services

### A.    *The Court's Ruling*

The court started its ruling denying mother's request for continued reunification services by noting it was **"troubled by the high standard that must be met in order to extend services to 24 months."** The court noted there was a "lack of evidence that it would be in [Jacob's] best interests to extend services." The court pointed out the only evidence the court received with regard to Jacob was that bonding had improved from Jacob not wanting to have contact with his mother to their having a good relationship including physical contact at visits. The court noted that Jacob was stable in his placement with just having visitation with mother.

The court noted it also had concerns about whether mother had made "significant and consistent progress" in the last 18 months, noting mother was aware of how critical the short time she had was and that she nonetheless put herself in a position to where she used drugs. The court also noted mother's period of remission from substance abuse was "really, really brief" given her long history of drug use. The court noted mother had not met the objectives of her case plan such as staying free from illegal drugs and criminality, noting she had both relapsed and violated her parole. The court found mother was not able to demonstrate she had the capacity, ability, and desire to complete the objectives of the substance abuse treatment program given her history. The court ultimately found based on the reasons stated there was "not sufficient evidence to support substantial probability to return" if it were to extend services.

### B.    *Analysis*

We review the juvenile court's factual findings for substantial evidence, and the decision-making process based on those findings for abuse of discretion. (See *In re William B.* (2008) 163 Cal.App.4th 1220, 1229.)

11.

The juvenile court was required to make all of the findings delineated under section 366.22, subdivision (b) in order to justify extending mother's services. Here, the court expressly found mother had not met her burden of proving that services were in the best interest of Jacob and that there was a substantial probability he could be returned to her care within the extended period of time. As to the latter factor, the court specifically found mother had not made significant and consistent progress nor shown she had the capacity, ability, or desire to complete the objectives of the substance abuse treatment plan. The court's finding that mother's burden of proof was not met were reasonable.

The circumstances that led to Jacob's removal was instability primarily due to mother's years' long drug addiction. By the time of the 18-month status review hearing, mother had barely scratched the surface of ameliorating her drug problem, much less "made significant and consistent progress" or "demonstrated the capacity and ability … to complete the objectives of … her substance abuse treatment plan" as required by section 366.22. subdivision (b)(2) and (b)(3)(A). This is evidenced by mother's failure to engage in substance abuse services before she was arrested, her relapse upon release despite receiving services in prison, and her subsequent relapse despite being enrolled in services at the time. Even though she had a little over two months of being sober at the 18-month review hearing, as the court pointed out, in the context of her years' long addiction, this period was relatively short. Long standing and chronic abuse is a serious problem not ameliorated in a short time. (See, e.g., *In re Amber M.* (2002) 103 Cal.App.4th 681, 686–687 [relapse following more than 300 days of sobriety]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423–424 [200 days insufficient to convince juvenile court that a relapse would not occur].) Mother's history of relapsing despite receiving treatment is evidence of this concept. In addition to using drugs during the reunification period despite participating in services in the present case, mother had previously relapsed after participating in the same program in which she was enrolled at the time of the hearing. Further, mother expressed hesitation in articulating at the hearing

12.

how she would avoid relapse in the future. Although she did say she planned to avoid other drug users, she did not explain how she would do so. Mother's statement at the beginning of the case that she had no support system, combined with an absence of testimony she had obtained one, and her previous poor response to substance abuse treatment belies mother's testimony she could complete treatment and avoid another relapse. Further, mother's housing where she could live with Jacob was conditional upon her graduating from her program.

Mother argues there was "no downside" to ordering additional family reunification services but we disagree. Jacob was 13 years old and had expressed his wishes to have more visits with mother, not be returned to her custody. He was doing well in his placement, and the only evidence of stress was the uncertainty of the case. These reasons, combined with the court's reasonable finding there was not a substantial probability Jacob could be returned to mother if she were to receive six additional months of services, support the court's conclusion it was not in Jacob's best interests for mother to continue receiving services. The court's order was in Jacob's best interests because it could help alleviate Jacob's stress rather than prolong the reunification period of the case that was unlikely to end in reunification.

Based on the foregoing reasons, we find the juvenile court's findings that mother had not met her burden of proving that further reunification services were in Jacob's best interest and there was not a substantial probability he could be returned to her should services be extended were supported by substantial evidence. Mother had not made significant and consistent progress nor demonstrated the capacity and ability to complete the objectives of her substance abuse treatment plan. Further, because a juvenile court is essentially required to terminate reunification services if the child cannot be returned home by the 18-month status review hearing unless it can make the required findings, we find no abuse of discretion by the juvenile court in denying mother's request.

In her briefing, mother does not mention section 366.22, subdivision (b) or make any arguments with regard to the findings the court was required to make under the statute in order to extend services. Instead, mother argues there were several factors that constituted a "special circumstance" that required the court to order additional services. Among those factors are: (1) mother was incarcerated for approximately one year of the reunification period; (2) Jacob was not a child of tender years and wished to spend more time with mother; (3) Jacob's permanent plan was long-term foster care not adoption; (4) Jacob and mother had a positive relationship and mother posed no danger to Jacob; and (5) there was no evidence on the record the agency attempted to establish visitation while mother was incarcerated.

To support her argument, mother cites cases which hold that in "special needs" cases, or cases where "extraordinary circumstances … militate[] in favor of extension of family reunification services," it is not an abuse of discretion for the juvenile court to extend reunification services beyond the statutory maximum. (See, e.g., *Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1388.) As the court in *Andrea L.* explained, "special needs" or "extraordinary circumstances" cases are cases where some external factor prevents the parent from participating in the case plan, such as where the parent is hospitalized or the agency failed to provide reasonable services. (*Id.* at p. 1388.)

Here, the only external factors mother raises are her incarceration and the agency's failure to establish adequate visitation between she and Jacob during her incarceration. Neither of these factors convince us that mother's case is the type of "special needs" case which would require the juvenile court to extend services.

We first note the cases cited by mother predate the 2008 amendment to section 366.22, which added current section 366.22, subdivision (b). (Stats. 2008, ch. 482, § 3.) The legislative intent behind the 2008 amendment was to expand the court's options at the 18-month status review hearing. The 2008 amendment codified authorization for the court to consider barriers to services faced by parents who are

14.

incarcerated and extend the parent's services *if* the requisite findings were made. (See Assem. Conc. Sen. Amends. to Assem. Bill No. 2070 (2007–2008 Reg. Sess.) as amended Aug. 18, 2008.) Mother's argument that her incarceration constituted an "extraordinary circumstance" carries little weight because, pursuant to section 366.22, subdivision (b), even when a parent is incarcerated during the reunification period, the juvenile court is still required to make the requisite findings before extending services beyond 18 months.

Turning to mother's argument that "the record does not show that the Agency attempted to establish any kind of visitation regimen between Jacob and [mother] during the time she was incarcerated," mother did not raise any argument regarding inadequate visitation or any argument that the agency in any way failed to provide reasonable services. For that reason, we find mother has forfeited this argument to the extent she is now arguing the agency failed to provide reasonable visitation or services. (*In re Kevin S.* (1996) 41 Cal.App.4th 882, 885–886 [the parent waived the right to contest finding of reasonable reunification efforts by not objecting below]; see *N.M. v. Superior Court* (2016) 5 Cal.App.5th 796, 808 [the parent was precluded from raising she was not offered reasonable reunification services on appeal due to inadequacy of mental health services, when at the hearing she had only objected to the adequacy of the visitation services she had received].)

Finally, with regard to mother's arguments regarding her relationship with Jacob, mother has not persuaded us they constitute an "extraordinary circumstance" requiring the court to extend her services. While we appreciate mother's points and commend her for beginning to rebuild her relationship with Jacob and having positive visits, in light of the court's finding there was not a substantial probability Jacob could be returned to mother within six months, which we have concluded is supported by substantial evidence, we conclude, even in light of the positive evidence, the court was required to terminate mother's services.

15.

We conclude none of the factors cited by mother compelled the juvenile court to extend mother's reunification services.  For the reasons we have already stated, we find no error.

## **<u>DISPOSITION</u>**

The juvenile court's January 28, 2020 order terminating mother's reunification services is affirmed.